# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MSP RECOVERY CLAIMS, ) <br> SERIES LLC ) <br> ) <br> ) **Case No.: _____** <br> PLAINTIFF, ) <br> ) <br> V. ) <br> ) <br> IDS PROPERTY CASUALTY ) <br> INSURANCE COMPANY, ) <br> ) <br> DEFENDANT. ) | |

## NOTICE OF REMOVAL

COMES NOW Defendant IDS Property Casualty Insurance Company ("Defendant"), and pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446 *et seq.,* hereby removes to this Court *MSP Recovery Claims, Series LLC, et al. v. IDS Property Casualty Company*, Case No. 2020-016388-CA-01, filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Venue in this Court is proper pursuant to 28 U.S.C. § 1441(a) and Local Rule 3.1 because this action is being removed from the state court in which it was originally filed, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

### BACKGROUND

1. On August 3, 2020, MSP Recovery Claims, Series LLC ("MSPRC"), filed a Class Action Complaint against IDS. Service of Process was made on the Chief Financial Officer of the State of Florida on August 12, 2020. Service was then made on Defendant via the Chief Financial Officer of the State of Florida on August 17, 2020. Pursuant to 28 U.S.C. § 1446(a), true and

legible copies of all papers filed in the State Court Action are attached hereto as Composite Exhibit "A."

2. In compliance with 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days after service of Plaintiffs' Complaint. IDS gave notice of the filing of this Notice of Removal to Plaintiff and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

## ARGUMENT

## FEDERAL QUESTION JURISDICTION

3. A defendant may remove an action to a federal district court "if that court has original jurisdiction over the action." 28 U.S.C. § 1441(a). District Courts have original jurisdiction over all "'civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Herman v. Hartford Life & Acc. Ins. Co.*, No. 10-61661-CIV, 2011 WL 1458050, at *2 (S.D. Fla. Apr. 15, 2011); *see also Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (whether a claim "arises under" federal law "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint").

4. Thus, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law, even where a federal claim is also available. . . . However, even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." *Dunlap,* 381 F.3d at 1290 (citations and internal

quotation omitted).  For a state-law claim to raise substantial questions of federal law, "[federal] law must be an essential element of [plaintiff's] claim[, and] the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Id.* (further stating "the state-law claim must "really and substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law.") (citations omitted).

5. Plaintiff's Complaint raises substantial questions of federal law, including the Medicare Secondary Payer statute ("MSP Act"), 42 U.S.C. § 1395y, and related federal regulations, including 42 C.F.R. § 411.25. The plain language of the Complaint makes clear the MSP Act and related regulations form the basis of Plaintiff's claim such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another.

6. Plaintiff is a shell litigation vehicle established by Plaintiff's attorneys, whose business model is to seek Medicare and Medicaid reimbursement payments from private insurers like Defendant.  Upon information and belief, Plaintiff or its sister entities have filed hundreds of cases arising from or relating to Medicare and Medicaid reimbursement payments.

7. The Class Action Complaint alleges Plaintiff obtained assignments from Medicare Payers, including AvMed Inc. ("AvMed") "to recover payment that Defendant IDS failed to pay pursuant to its primary obligation." (Class Action Complaint ¶ 3). The assigned claims include the "right to pursue and recover payments made by AvMed" on behalf of enrollees identified on Exhibit F to the Complaint, and "include the right to recover payments made by AvMed on behalf of all of the AvMed enrollees identified on Exhibit F and all AvMed enrollees identified in the exemplar claims set forth above." (*Id.* at ¶ 6).

8. According to the Prayer for Relief, Plaintiff seeks a declaratory judgment declaring the parties' respective rights and obligations under Section 627.736(4), Florida Statutes, **and otherwise applicable law**, including but not limited to, an explanation of Defendant's IDS's affirmative duty to (a) determine whether its insureds are entitled to Medicare benefits under Part C to enable the proper coordination of benefits; (b) must alert Medicare Payers of its primary obligation and (c) prevent Medicare Payers from paying for accident-related medical items and services for which Defendant IDS has a primary obligation.

9. Plaintiff defines the putative class as follows:

> All non-governmental organizations (including, but not limited to MAOs, first-tier and downstream entities, and their assignees (collectively "Medicare Payers"), that provide Medicare benefits under Part C in the State of Florida, for which Defendant IDS under a no-fault/PIP insurance policy has a primary obligation, and thus, has an affirmative duty to (a) determine whether its insured are entitled to Medicare benefits under Part C to enable proper coordination of benefits; (b) must alert Medicare Payers of its primary obligation; (and (c) prevent Medicare Payers from paying for accident-related medical items and services for which Defendant IDS has a primary obligation.

(Complaint ¶ 35).

10. Plaintiff contends the allegedly common questions of law and fact at issue include, *inter alia,* whether IDS (a) has an affirmative duty to coordinate benefits as primary and ascertain whether its insureds are entitled to Medicare benefits, including benefits under Part C; (b) "must collect certain data fields such as First Name, Last Name, Date of Birth, and Social Security Number, Health Insurance Claim Number ("HICN") or Medicare Beneficiary Identifier ("MBI") to determine its insureds' Medicare eligibility" and (c) "was required to provide notice or otherwise inform Plaintiff, and the class, of its primary obligation, and to further provide specifics

as to the accident or injury for which it is primarily responsible." (Class Action Complaint ¶ 39(3)(4)(5) and (8).

11.     Federal courts have original jurisdiction over MSP Act claims under 28 U.S.C. § 1331. Here, Plaintiff's specifically request a determination as to whether IDS's insureds "are entitled to Medicare benefits under Part C to enable the proper coordination of benefits." (Complaint, Prayer for Relief). Thus, Plaintiff's Complaint requires an interpretation, analysis and application of the MSP Act in order to resolve this matter. *In re Avandia Mktg.*, 685 F.3d 353, 357 (3d Cir. 2012) ("District Court had subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because interpretation of the federal Medicare Act presents a federal question.").

12.     Whether the putative class members are entitled to Medicare benefits under Part C is not the only claim that necessarily arises from and requires an interpretation of federal law. The alleged reporting requirements relied on by Plaintiffs are, in fact, purely a function of federal law. Section 1395y(b)(8) requires certain entities, including no-fault insurers like IDS, to report to the Secretary of Health and Human Services certain claims information concerning insureds covered by Medicare.  Specifically, in relevant part, section 1395y(b)(8) provides as follows:

> **(8) REQUIRED SUBMISSION OF INFORMATION BY OR ON BEHALF OF LIABILITY INSURANCE (INCLUDING SELF-INSURANCE), NO FAULT INSURANCE, AND WORKERS' COMPENSATION LAWS AND PLANS**
>
> **(A) Requirement:** On and after the first day of the first calendar quarter beginning after the date that is 18 months after December 29, 2007, an applicable plan shall—
>
>> **(i)** determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under the program under this subchapter on any basis; and
>>
>> **(ii)** if the claimant is determined to be so entitled, submit the information described in subparagraph (B) with respect to the claimant to the Secretary in a form and manner (including frequency) specified by the Secretary.

(B) **Required information**: The information described in this subparagraph is—

(i) the identity of the claimant for which the determination under subparagraph (A) was made; and

(ii) such other information as the Secretary shall specify in order to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim.

13. Federal regulations promulgated by the Department of Health and Human Services in 42 C.F.R. § 411.25 further elaborate on a no-fault insurer's purported duties under the federal statutory scheme, as follows:

**§ 411.25 Primary payer's notice of primary payment responsibility.**

(a) If it is demonstrated to a primary payer that [Centers for Medicare & Medicaid Services] has made a Medicare primary payment for services for which the primary payer has made or should have made primary payment, it must provide notice about primary payment responsibility and information about the underlying MSP situation to the entity or entities designated by CMS to receive and process that information.

(b) The notice must describe the specific situation and the circumstances (including the particular type of insurance coverage as specified in § 411.20(a)) and, if appropriate, the time period during which the insurer is primary to Medicare.

(c) The primary payer must provide additional information to the designated entity or entities as the designated entity or entities may require this information to update CMS' system of records.

14. There is no corresponding requirement to collect, retain, or report insureds' identifying information under Florida law. Thus, Plaintiffs' requested relief in the present complaint seeking a judicial determination of whether "Defendant IDS must collect certain data fields . . . to determine its insureds' Medicare eligibility" is purely a function of federal law, as Plaintiffs have conceded in their filings.

15. In prior lawsuits, Plaintiff has demonstrated that the relief sought in the present complaint—including a judicial determination of whether IDS "has an affirmative duty to ascertain whether its insureds are entitled to Medicare benefits" and whether IDS "must collect certain data

04778900.6                                                                                                          6

fields . . . to determine its insureds' Medicare eligibility" as a primary payer—concerns the application and interpretation of federal law, specifically, 42 U.S.C. § 1395y(b)(8), the federal Medicare Secondary Payer statute, and accompanying federal regulations.

16. Plaintiff's sister entity (represented by the same attorneys as in the instant action) have also previously filed a Complaint in this Court highlighting the explicitly federal nature of its claims. *See MSPA Claims 1, LLC v. IDS Property Casualty Insurance Co.,* 15-CV-21687-JLK (S.D. Fla. May 4, 2015) (attached hereto as Exhibit B). The allegations in the Second Amended Complaint included (emphasis added):

> 27. **Pursuant to the requirements of Medicare Part C and CMS Regulations**, CMS delegates **the obligation(s) to administer,** provide Medicare benefits, and assume Medicare's economic risk for the benefits and payments provided on behalf of Medicare Advantage enrollees, such as M.A. ("Enrollee"), to MAOs, such as FHCP. (footnote omitted)
>
> 35. **Pursuant** to Section 627.736, Florida Statutes, **42 U.S.C. § 1395y(b)(3)(A)**, existing case precedent and the no-fault insurance contract, **Defendant had a legal obligation to make primary payment for all medical services provided to its insured as a result of the Accident**, but Defendant failed to satisfy this obligation.
>
> 52. **Pursuant to 42 U.S.C. § 1395y(b)(8), as enacted by Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA")**, a responsible reporting entity ("RRE") is required **to report its status and responsibility as a primary payer to CMS and/or MAOs, so that an enrollee's Medicare benefits may be properly coordinated.** (footnote omitted).
>
> 53. As Defendant is an RRE, it had an affirmative duty to provide notice regarding its primary payment status and responsibility to all entities designated by CMS to receive and process such information, such as FHCP.
>
> 54. Furthermore, **pursuant to 42 C.F.R. § 411.25, Defendant is obligated to provide notice to an MAO**, such as FHCP, when it has made a Medicare secondary payment for services for which the Defendant should have made primary payment.

17.     In a motion to compel IDS's production of certain electronic data containing identifying information regarding IDS insureds filed in another matter, Plaintiffs placed particular focus on IDS's **reporting requirements under federal law**.[1] *See MSPA Claims I, LLC v. IDS Property Casualty Insurance Co.*, Case No. 15-27940-CA (Fla. Cir. Ct. 2015). Plaintiffs argued that in response to its discovery request, IDS had not produced accurate or complete identifying information regarding its insureds. Plaintiffs focused their argument on IDS's purported failure to comply with the reporting requirements mandated by 42 U.S.C. § 1395y(b)(8), arguing: "IDS' data was inaccurate as: . . . 2,659 claim numbers **did not have the fields necessary to comply with 42 U.S.C. § 1395y(b)(8) reporting requirements**." *See* Exh. C, at ¶¶ 5-6. Plaintiffs likewise stated that in order to investigate IDS's data reporting, **Plaintiffs "performed a query of the Center of Medicare and Medicaid Services' database to identify reporting for instances where IDS was a primary payer."** *See* Exh. C, at ¶ 7. Thus, Plaintiffs alleged that in missing certain data points in its production to Plaintiffs, IDS purportedly **violated a purely federal requirement**, which Plaintiffs "confirmed" by searching a federal agency's database.

18.     Likewise, in an opposition relating to Plaintiffs' same motion to compel data, Plaintiffs doubled down on their contention that **IDS failed to comply with federally mandated reporting requirements, placing particular emphasis on the requirements set forth in 42 C.F.R. § 411.25**.[2] In their opposition, Plaintiffs argued as follows:

> [I]t is the custom and practice of the Centers for Medicare & Medicaid ("CMS") and primary plans to maintain records in a detailed electronic format. By way of background, according to the Federal Register, 42 C.F.R. § 411.25 requires of worker's compensation plans and insurers, liability insurers and no-fault insurers

---

[1] A true and correct copy of Plaintiffs' Motion to Compel Defendant's Production of Electronic Data is attached hereto as Exhibit C.
[2] A true and correct copy of Plaintiffs' Response in Opposition to Defendants' Motions for Reconsideration is attached hereto as Exhibit D.

to provide the following information to the Medicare intermediary or carrier that paid the claim when the third party payer learns that Medicare has mistakenly mad [sic] a primary payment for services for which the third party payer has primary payment responsibility to include, amongst other items, the: (1) beneficiary name, address, sex, and date of birth; (2) beneficiary health insurance claim number (i.e., Medicare beneficiary identification number or "HIC number"); (3) social security number (if known) or Medicare claim information; (4) date of accident; injury; or illness; (4) provider or service; (5) amount of Medicare payment (if known), etc. *See* 42 C.F.R. § 411.25.  **As such, IDS is required to maintain this information within its systems.**

Moreover, according to the U.S. Department of Health and Human Services ("HHS"), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").  The 837 standard is mandated by the federal government[.] . . . Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

[W]hen IDS receives medical bills for a person that is a Medicare recipient, those standard forms are contained in the HICFA 1500 or the UB04 forms. . . . In those forms, the Medicare patient's First Name, Last Name, Date of Birth and "other insurance member id," which is either a HICN or MBI will all be found as necessary elements of the bill, as indicated above and required by law.[3]

19. Plaintiffs argued that despite IDS's admitted receipt of medical bills containing relevant identifying information necessary for reporting under 42 C.F.R. § 411.25, IDS allegedly was "in violation of federal law" by providing deficient information in response to Plaintiffs' data request.  Again, Plaintiffs' argument that IDS produced deficient data relied exclusively on federal requirements.

20. The Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff's claims turn on "substantial questions of federal law." The U.S. Supreme Court recognized in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing* that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify the resort to the experience, solicitude, and

---

[3] The pertinent arguments in Plaintiffs' Response in Opposition to Defendants' Motions for Reconsideration are found in Part V, at Pages 14-18.

hope of uniformity that a federal forum offers on federal issues." 545 U.S. 308, 312 (2005). As the Supreme Court explained in *Grable*, the test for whether a federal court should hear a case under this doctrine is not whether the federal statute provides a parallel private right of action (as some federal courts have held), but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities." *Id*. at 313. In *Grable*, just as in this case, the Supreme Court concluded that federal-question jurisdiction existed because the plaintiffs' state-law claim was premised on the failure of a government agency to fulfill its responsibilities as defined by federal law, requiring the interpretation of federal law in order to apply an "essential element" of the state-law claim. *Id*. at 314.

## DIVERSITY JURISDICTION

21. This Court also has original jurisdiction over this action because the matter in controversy exceeds $75,000.00 and is between citizens of different states. 28 U.S.C. § 1332. Therefore, this action is removable to federal district court. 28 U.S.C. § 1441(a).

22. Diversity jurisdiction requires complete diversity between named plaintiffs and defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."). For purposes of diversity, a corporation is a citizen of every state in which it has been incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Limited liability companies are considered citizens of each state in which its members are citizens. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen. . . . To sufficiently allege the citizenships of [a limited liability company], a party must list

the citizenships of all the members of the limited liability company."); *Trutie v. Republic Nat'l Distrib. Co.*, 718 F. Supp. 2d 1350, 1351 (S.D. Fla. 2010) (same).

23. Defendant is a corporation incorporated under the laws of the State of Wisconsin with its principal place of business in De Pere, Wisconsin. Defendant is, and at all times relevant hereto was, authorized to do business in the State of Florida.

24. Plaintiff MSPRC is a Delaware series limited liability company formed in Delaware, and its sole member is VRM MSP Recovery Partners, LLC, a Delaware limited liability company. The members of VRM MSP Recovery Partners, LLC are (i) Virage Recovery Master, LP, a Delaware limited partnership, and (ii) Series MRCS, a designated series of MDA, Series LLC, a Delaware series limited liability company. The sole general partner of Virage Recovery Master LP is Virage Recovery, LLC, a Texas limited partnership. The sole members of Virage Recovery, LLC are individual citizens of Texas. The members of Series MRCS and MDA, Series LLC consist of individual citizens of Florida and a Florida family limited liability partnership, he general partners of which are individual resident/citizen trustees of Florida trusts. *See MSP Recovery Claims, Series LLC v. Cook, Inc.*, No. 1:18-cv-24309 (S.D. Fla. Dec. 21, 2018) Citizenship Affidavit on Behalf of MSP Recovery Claims, Series LLC (D.E. 30-1).[4]

25. As no member of any Plaintiff-LLC is a citizen of Wisconsin, complete diversity exists among the parties.

26. Where, like here, a party is seeking fees under a statute or contract, "a reasonable amount of those fees is included in the amount in controversy." *Rouse v. USAA Casualty Insurance Company*, No. 8:14-cv-2590, 2014 WL 12708719 (M.D. Fla. December 22, 2014) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)); *Crescent Lumber &*

---

[4] Attached hereto as Exhibit E.

04778900.6                                                                 11

*Shingle Company v. Rotherum*, 218 F.2d 638 (5th Cir. 1955); *Lott & Friedland, P.A. v. Creative Compounds, LLC*, No. 10-20052-CV, 2010 WL 2044889, at *2 (S. D. Fla. April 21, 2010). As part of a settlement in a similar class action, Plaintiff's counsel's fee was $1,100,000, far exceeding the $75,000 in controversy. *See MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance*, 2015-1946-CA-06 (Fla. Cir. Ct. 2015), Plaintiff's Second Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Class for Settlement Purposes, at p. 19, ¶ 1.[5]

27. Furthermore, although Plaintiff contends in one instance that it "does not seek monetary damages," such allegation is suspect given the references to the alleged failure to identify and coordinate benefits, Plaintiff's right to recover and pursue payments, IDS's alleged responsibility to reimburse AvMed, IDS's alleged affirmative duty to ascertain whether insureds are entitled to Medicare benefits and IDS allegedly "causing Plaintiff and the Class to make payment for accident-related medical items and services Defendant IDS as primary was responsible for." (Compare Complaint ¶ 53 with Complaint ¶¶ 3, 6, 20, 23, 30, 33, 39, 45). Plaintiff also contends that each member of the putative class **"ha[s] sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant IDS's wrongful conduct**." (Complaint ¶ 40) (emphasis added). Such allegation demonstrates the object of the litigation is to recover reimbursement or payment from Defendant for payments made by class members which Plaintiff contends should have been paid by IDS.

28. In combining the evidence available with reasonable deductions, inferences, and extrapolations, it is clear that the value of the object of this litigation exceeds $75,000.00. In Florida, most personal injury protection insurance policies, like those at issue in this case, are valued at $10,000.00. *See* Fla. Stat. Ann. § 627.736(1). Plaintiff's Complaint references over 100

---

[5] Attached hereto as Exhibit F.

"assigned claims" and the right to pursue and recover payments made by "Enrollees" identified in Exhibit F. (Complaint ¶ 6, Exhibit F). Multiplying 100 assigned claims by $10,000 easily exceeds the $75,000 jurisdictional threshold. *See Lane v. Guar. Bank*, No. 6:13-CV-259-ORL-36, 2013 WL 2436240, at *3 (M.D. Fla. June 5, 2013). "[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). "A defendant may obtain removal of a case to federal court by relying on evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Krugman-Kadi v. Wells Fargo Bank, N.A.*, No. 1:13-CV-204-MW-GRJ, 2013 WL 6388636, at *2 (N.D. Fla. Dec. 6, 2013), *report and recommendation adopted,* No. 1:13-CV-204-MW/GRJ, 2014 WL 37318 (N.D. Fla. Jan. 6, 2014) ("*Krugman-Kadi*") (internal quotation marks and citation omitted).

29. Defendants reserve the right to file additional support for this Notice of Removal, including, but not limited to, affidavits, deposition testimony, expert testimony, discovery responses, supplemental memoranda, and legal argument. By filing this Notice of Removal, Defendants do not waive, and expressly preserve, any and all defenses and affirmative defenses available to them.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court assume jurisdiction of the cause herein.

Dated: September 16, 2020

                                                    Respectfully submitted,

                                                    */s/ Edward M. Holt*
                                                    Edward M. Holt (Fla. Bar No. 120473)

                        **Maynard, Cooper & Gale, P.C.**
                        2400 Regions/Harbert Plaza
                        1900 Sixth Avenue North
                        Birmingham, AL 35203
                        E: tholt@maynardcooper.com

                        Ramón A. Abadin (Fla. Bar No. 707988)
                        **Ramón A. Abadin, P.A.**
                        232 Andalusia, Suite 200
                        Coral Gables, FL 33134
                        T: (305) 768-9839
                        E: rabadin@abadinlaw.com

                        *Attorneys for IDS Property Casualty*
                        *Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, the foregoing was filed using the Court's CM/ECF system and served via transmission of Notices of Electronic Filing generated by CM/ECF to all counsel by the Court's CM/ECF system.

By: */s/ Edward M. Holt*

John Ruiz, Esquire
MSP Recovery Law Firm
5000 SW 75 Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2222
Facsimile: (305) 239-8870
jruiz@msprecovery.com